IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RUBIDIA DEL ROSARIO CORDOVA DE GARCIA,

Plaintiff,

v.

PAM BONDI, *et al.*,

Defendants.

CIVIL ACTION NO.
1:25-cv-05517-TRJ

**ORDER**

On February 5, 2026, Defendants moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. (Doc. 9). Upon review and consideration, Defendants' motion is **GRANTED**.

BACKGROUND

Plaintiff Rubidia del Rosario Cordova de Garcia is a native and citizen of El Salvador. (Doc. 1 at ¶ 24). In May 2015, Plaintiff approached the United States Drug Enforcement Agency (the "DEA") with information regarding an organized drug trafficking and money laundering operation in Atlanta, Georgia. (*Id.* at ¶¶ 2–3, 26–27). In June 2015, Plaintiff wore a wire to a drug deal to assist the DEA. (*Id.* at ¶ 28). Plaintiff's information, assistance, and testimony ultimately led to the conviction of multiple drug traffickers and the seizure of 95 pounds of methamphetamine and multiple pounds of cocaine by the Gwinnett County District Attorney's Office (the "DA's Office"). (*Id.* at ¶¶ 24–31).

On July 8, 2019, the DA's Office submitted an S visa application (Form I-854A)

on behalf of Plaintiff and her two daughters "[i]n recognition of Plaintiff's service as an informant and witness."[1] (*Id.* at ¶ 32). On December 6, 2019, the Department of Justice's Criminal Division returned the application to the DA's Office and identified several deficiencies in the application in a letter. (Doc. 1-2; Doc. 9-1 at ¶ 9). On February 10, 2020, the DA's Office re-submitted the application to provide additional documents and information and cure the original deficiencies. (Doc. 1 at ¶ 34). Between September 2020 and September 2022, the DA's Office exchanged emails with the Department of Justice regarding additional deficiencies in the application and status updates. (*Id.* at ¶¶ 36–40).

According to Defendants, the application was again returned to the DA's Office on either February 24 or March 5, 2025 "to, among other things, ascertain whether Plaintiff's continued presence in the United States is essential to the success of an authorized criminal investigation or the successful prosecution of an individual involved in a criminal organization or enterprise." (Doc. 9-1 at ¶ 9; Doc. 12-1). Unlike the prior returns, the DA's Office was not aware the application was returned. (Doc. 11 at 5). In fact, the DA's Office continued to reach out to the Department of Justice seeking information about the application in July and August 2025. (Docs. 1-3, 1-5, 1-6).

On September 26, 2025, Plaintiff sued Defendants under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*, and the Mandamus Act, 28 U.S.C.

[1] An S visa is a temporary visa for aliens "in possession of critical reliable information concerning a criminal organization or enterprise" who are willing to supply "such information to Federal or State law enforcement authorities." *See* 8 U.S.C. § 1101(a)(15)(S). A law enforcement agency applies for the S visa on behalf of the alien. 8 C.F.R. § 214(t).

§ 1361. (Doc. 1 at 16–18). In her complaint, Plaintiff seeks relief in the form of: (1) a writ compelling Defendants to adjudicate the S visa application within 30 days of judgment in this action; and (2) a declaration that Defendants' unreasonable delay in adjudicating the application violates the Immigration and Nationality Act ("INA"), federal regulations, and the APA. (*Id.* at 18). On February 5, 2026, Defendants moved to dismiss Plaintiff's complaint as moot because "there is no case or controversy and no meaningful relief the Court can provide." (Doc. 9).

## LEGAL STANDARD

Under Article III of the Constitution, federal courts may adjudicate only genuine "Cases" and "Controversies." U.S. CONST. art. III, § 2. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). So, "a case must be dismissed as moot if the court can no longer provide meaningful relief." *Nyaga v. Ashcroft*, 323 F.3d 906, 913 (11th Cir. 2003) (citation modified). A case also becomes moot when "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation modified). Because mootness "implicates the fundamental question of a trial court's jurisdiction, a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Marko Cap. of Am., Inc. v. UBS AG*,

543 F.3d 1254, 1258 (11th Cir. 2008) (citation modified); *see also Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) ("[M]ootness is jurisdictional."). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## DISCUSSION

In their motion, Defendants argue that Plaintiff's action is moot because she has no pending visa application before any Defendant. (*See* Docs. 9, 12). In response, Plaintiff argues that: (1) the return of her application was not a final adjudication, and, absent such adjudication, her case remains ripe for review; and (2) even if the return constituted final adjudication, "a live controversy remains because [Defendants'] conduct is capable of repetition yet evades review." (Doc. 11 at 8–13). Defendants offered evidence that Plaintiff's S visa application was returned to the DA's Office in 2025. (Doc. 12-1). The DA's Office has not since re-applied on behalf of Plaintiff, nor is there any indication in the record that it intends to pursue the application now that it has been returned.[2] (*Id.* at 7). Because Plaintiff's application is no longer active, Defendants contend that "there is no case or controversy and no meaningful relief the Court can provide." (Doc. 9 at 7; Doc. 9-1 at 5).

### A. Regulatory Framework for S Visas

Under 8 U.S.C. § 1101(a)(15)(S), Congress granted the Attorney General

[2] A request for an S visa may only be filed by a federal or state law enforcement agency. 8 C.F.R. § 214.2(t)(4).

authority to grant a nonimmigrant visa to a person who:

> (I) is in possession of critical reliable information concerning a criminal organization or enterprise;
>
> (II) is willing to supply or has supplied such information to Federal or State law enforcement authorities or a Federal or State court; and
>
> (III) whose presence in the United States the Attorney General determines is essential to the success of an authorized criminal investigation or the successful prosecution of an individual involved in the criminal organization or enterprise.

The Attorney General may also grant a visa to unmarried children who accompany such a person. 8 U.S.C. § 1101(a)(15)(S). These visas are called "S visas" consistent with the corresponding subsection of the code.

The applicable regulations identify the process for obtaining an S visa. Under 8 C.F.R. § 214.2(t)(4), an S visa application "may only be filed by a federal or state [law enforcement agency] (which shall include a federal or state court or a United States Attorney's Office) directly in need of the information to be provided by the alien witness or informant." The law enforcement agency must submit the application to the Assistant Attorney General for the Criminal Division of the Department of Justice, "who will forward only properly certified applications that fall within the numerical limitation to the Commissioner, Immigration and Naturalization Service,[3] for approval." 8 C.F.R. § 214.2(t)(4). The regulations, therefore, contemplate a three-

[3] The Immigration and Naturalization Service was abolished by the Homeland Security Act in 2002, and its duties are now carried out by the Department of Homeland Security and U.S. Citizenship and Immigration Services. *See Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 n.3 (11th Cir. 2025); *see also Bigler v. United States Att'y Gen.*, 451 F.3d 728, 730 n.1 (11th Cir. 2006).

step process, where the Assistant Attorney General first determines "properly certified applications," then forwards only those properly certified applications to the Commissioner, and the Commissioner finally determines whether to grant or deny the certified application. *Id.* Based on the record available to the Court, it appears that Plaintiff's application has not yet passed the first step.

As to this first level review by the Department of Justice, the regulations provide that the Assistant Attorney General "shall ensure that all information relating to the basis of the application, the need for the witness or informant, and grounds of excludability under section 212 of the Act has been provided to the Service on Form I–854, and shall consider the negative and favorable factors warranting an exercise of discretion on the alien's behalf." 8 C.F.R. § 214.2(t)(4)(ii). The Assistant Attorney General cannot act on any application unless "the eligible [law enforcement agency] making the request has proceeded in accordance with the instructions on, or attached to, Form I-854 and agreed to all provisions therein." *Id.* The Assistant Attorney General, however, must forward to the Commissioner applications "that have been certified in accordance with the provisions of this paragraph and that fall within the annual numerical limitation." 8 C.F.R. § 214.2(t)(4)(ii)(D).

Under the APA, reviewing courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "To state a claim for unreasonable delay, a party must allege 'that an agency failed to take a <u>discrete</u> agency action that it is required to take.'" *Jiwani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 1:25-cv-02847-MHC, 2026 WL 788945, at *5 (N.D. Ga. Mar. 18, 2026)

(quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). The APA precludes judicial review of discretionary agency functions and "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." *Id.*

Embedded in the Assistant Attorney General's review are several discretionary acts. Though the Assistant Attorney General must forward applications that are properly certified to the Commissioner, the process of determining whether an application is complete and properly certified is left to the discretion of the Assistant Attorney General. There does not appear to be any mandatory language in the regulation requiring the Assistant Attorney General to issue a final decision as to whether an application meets the "properly certified" requirement, nor is there any notice provision related to the Assistant Attorney General's review pre-certification.

**B. Plaintiff's application was returned and has not been certified.**

"[A] case becomes moot when the reviewing court can no longer offer any effective relief to the claimant." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). Here, Plaintiff seeks "to compel Defendants to adjudicate the S visa application." (Doc. 1 at 18). But the Court cannot compel Defendants to adjudicate an application that is not pending before them. *See Thompson v. U.S. Dep't of Homeland Sec.*, No. 8 24-CV-349-KKM-AAS, 2025 WL 417728, at *3 (M.D. Fla. Feb. 6, 2025) (explaining that compelling adjudication would be futile where "there [were] no longer active [visa] applications for [defendants] to grant" (citation modified)). And though Plaintiff argues that the return does not constitute a "final adjudication" of her application, she points to no language in the regulatory framework requiring such

an adjudication prior to the discretionary review and certification by the Assistant Attorney General.[4]

In any event, the relevant inquiry is whether the Court is able "to provide redress in some palpable way" when the record shows either a returned application that was abandoned by the DA's Office or a finally adjudicated application that was rejected because it lacked necessary information. *Gagliardi*, 889 F.3d at 733; (Doc. 11 at 10–11). Under either scenario, no visa application is pending before any Defendant, and the Court cannot compel agency action or declare anything about an agency's failure to act on an abandoned or closed application. The case is, therefore, moot. *See Thompson*, 2025 WL 417728, at *3 (dismissing case as moot where the plaintiffs' visa applications were "no longer active" because "an order directing USCIS to grant [the plaintiffs'] old applications would not provide redress to the plaintiffs"); *see also Calderon v. Ashmus*, 523 U.S. 740, 749 (1998) (holding that courts cannot grant a declaratory judgment in the absence of a "concrete controversy susceptible to conclusive judicial determination").

Plaintiff also argues that, even if the return of her application rendered her claims moot, "a live controversy remains" under the narrow exception for controversies capable of being repeated and evading review. (Doc. 11 at 13). District courts may rule on a case that has otherwise become moot if it arises from actions

[4] Moreover, though the government did not raise a jurisdictional argument based on the scope of the Court's review of discretionary actions, it is not clear that the APA permits this Court to review or compel any action related to a pending S visa application in light of the Assistant Attorney General's exclusive discretion to review such applications and only submit applications it has certified as complete.

that are "capable of repetition, yet evading review." *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004) (citation omitted). This exception applies where: "(1) there is a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Najjar*, 273 F.3d at 1336 (citation modified). This exception is narrow and applies only in exceptional circumstances. *Id.* at 1340.

Plaintiff argues that the first prong is satisfied since Defendants have "twice 'returned' or asked for resubmission of the S visa application," and "[t]his history indicates" that Defendants are "likely to engage in [this practice] again." (Doc. 11 at 14). But "even a likely recurrence is insufficient" to overcome mootness "if there would be ample opportunity to review at that time" under the second prong. *Najjar*, 273 F.3d at 1336. Here, there is no indication in the record that the DA's Office plans to resubmit Plaintiff's application, and she cannot seek an S visa on her own. In the event the DA's Office elects to submit another application, there is no reason to believe that there would be inadequate time for judicial review if Defendants fail to carry out their obligations under the law. And though Plaintiff argues that "returns [of a visa application] can happen quickly," a "mere possibility . . . cannot justify the exercise of jurisdiction over [a] case." (Doc. 11 at 14); *Najjar*, 273 F.3d at 1340 (citing *Westmoreland v. Nat'l Transp. Safety Bd.*, 833 F.2d 1461, 1463 (11th Cir. 1987)). Ultimately, the capable-of-repetition exception "applies only in the exceptional circumstance in which the same controversy will recur and there will be inadequate

time to litigate it prior to its cessation." *Id.* Plaintiff has not established that those circumstances exist here.

Plaintiff's S visa application was returned more than one year ago, and, to date, is not pending before any Defendant. The Court cannot compel Defendants to adjudicate an application not presently before it. *Thompson*, 2025 WL 417728, at *3; *see also Gagliardi*, 889 F.3d at 735 ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief."). Because the Court can "no longer offer any effective relief" to Plaintiff, her case is moot. *Gagliardi*, 889 F.3d at 733.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 9) is **GRANTED**, and this case is **DISMISSED** without prejudice for lack of subject matter jurisdiction. The Clerk is respectfully **DIRECTED** to **CLOSE** this case.

SO ORDERED, this 24th day of June, 2026.

TIFFANY R. JOHNSON
United States District Judge